## Yellow Cab Company, Appellant, v. Charles Ensler, Appellee.

## Gen. No. 24,560.

1. TRADE-MARKS AND TRADE NAMES, § 2*—*when taxicab device is not valid trade-mark.* Under Hurd's Rev. St. ch. 140, p. 2935 (J. & A. ¶ 11391), defining trade-marks, a device used by a taxicab service corporation did not relate to trade in articles of commerce or their containers, and was therefore not a valid trade-mark.

2. TRADE-MARKS AND TRADE NAMES, § 26*—*when taxicab company cannot enjoin use of similar cab device.* A taxicab service corporation which had adopted and for many years used a Y-shaped figure in a circle as its monogram, and which although registered with the Secretary of State of Illinois, was not a valid trade-mark, was not entitled to an injunction restraining a competitor from using the same device, under the theory of unfair competition, where such monogram had prior to its adoption by complainant been adopted, substantially, as the insignia of the City of Chicago, for its use, or the use of any individual or company caring to use it; and the question whether or not the ordinance adopting such device by the city was valid or not was immaterial.

3. TRADE-MARKS AND TRADE NAMES, § 26*—*what evidence necessary to entitle taxicab company to enjoin use of similar cab device.* Although the principle underlying the law of unfair competition that one may not pass off his goods as the goods of another and that if he does so it is a fraud not alone upon his competitor but upon the public as well applied as between competing taxicab service merchants, complainant was held not entitled to an injunction to restrain the intentional copying of its cab device, in the absence of evidence that any person had been actually deceived by the acts complained of.

Appeal from the Superior Court of Cook county; the Hon. CHARLES M. FOELL, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1918. Affirmed. Opinion filed October 10, 1919. *Certiorari* denied by Supreme Court (making opinion final).

D'ANCONA & PFLAUM, for appellant; FRANK F. REED and EDWARD S. ROGERS, of counsel.

MUSGRAVE, OPPENHEIM & LEE, for appellee.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

MR. PRESIDING JUSTICE MATCHETT delivered the opinion of the court.

This is an appeal from a decree which dismissed complainant's bill for want of equity.

The bill charged that defendant infringed complainant's registered trade-mark, and further set up facts tending to show that defendant was guilty of unfair competition. The evidence was taken in the form of affidavits submitted by the parties, with exhibits attached thereto, and a stipulation as to certain undisputed facts. Indeed there is little dispute as to any material fact in the case.

The complainant owns and for many years has operated in the City of Chicago a public taxicab service. It is incorporated under the name of the Yellow Cab Company. It has adopted a peculiar dress for its cabs, consisting of a yellow body and black tops, etc. It has also adopted an alleged trade-mark device which is placed upon the doors of its cabs. This device is described in the bill of complaint as, "consisting of the representation of a strap and buckle in circular form, about six inches in diameter, appearing in gold leaf upon the side doors upon each of the taxicabs of said Yellow Cab Company of Illinois, with the telephone number of the company thereon, and in the centre of the circle a Y-like formation in white, with the words 'Yellow Cab Co.' appearing in three segments of the circle formed by the letter 'Y' in white, upon a black background * * * ." It is alleged and admitted that this device was registered by the complainant with the Secretary of the State of Illinois and that this alleged trade-mark device through long years of use has come to be one of the marks or devices by which complainant's taxicabs are identified.

The defendant is a member of an association known as the "Independent Taxi Owners Association." Its members are likewise engaged in the business of

furnishing public taxicab service in the City of Chicago. He began this business subsequently to the complainant, and with the full knowledge of the aforesaid facts in regard to complainant's alleged trade-mark and its use. In December, 1917, he began operating a line of taxicabs known as the "Red Cab Service." Instead of the yellow color which distinguishes complainant's cabs, defendant adopted a bright red color. He adopted and used upon the doors of his cabs, again using the language of complainant, "a device, consisting of the representation of a circle about six inches in diameter, in gold leaf background, with the words, 'Red Cab Service' appearing on the outer ring of the circle, and in the center of the circle a Y-like formation in red, with the letters 'I T A ' appearing in three segments of the circle formed by the letter 'Y,' and the letter 'O' appearing on the tail or lower end of the 'Y.' " A facsimile production of each device in colors appears on the record.

We think appellant fairly states the situation when it says, it is evident that while difference in detail exists, the salient and noticeable features of complainant's trade-mark device, the circle disc and "Y" are reproduced in the trade-mark device of defendant. Indeed, in every other detail it would seem the defendant endeavored to distinguish rather than imitate the device of complainant.

If complainant's device is a valid trade-mark and the complainant obtained an exclusive property right in it by the registration thereof, we think it would be entitled to a decree. However, we think it is apparent from the statute, Hurd's Rev. St. ch. 140, p. 2935 (J. & A. ¶ 11391), as well as decisions of the courts, that complainant's device cannot be considered a trade-mark as applied to its business.

"Service is not trade in articles of commerce, and * * * trade-marks * * * must actually be upon

articles of commerce or their containers." *Searchlight Gas Co. v. Prest-o-Lite Co.*, 215 Fed. 695.

See also *Candee, Swan & Co. v. Deere & Co.*, 54 Ill. 439; *Bolander v. Peterson*, 136 Ill. 215; *Diederich v. W. Schneider Wholesale Wine & Liquor Co.*, 195 Fed. 35. The bill, therefore, cannot be sustained on the theory that defendant was guilty of technical imitation of complainant's trade-mark.

But although defendant's monogram is not a technical trade-mark, nevertheless, upon sufficient proof, the good-will of its business would be entitled to protection from unfair competition such as is alleged in the bill. The fundamental principle, underlying the law of unfair competition, is that one may not pass off his goods as the goods of another. If he does so, it is a fraud, not alone upon his competitor but upon the public as well. The principle is broad enough to cover service of the kind which complainant gives, as well as goods. Each case must be decided upon the particular facts which the record shows. *Coca-Cola Co. v. Koke Co. of America*, 235 Fed. 408.

The bill in this case alleges that the defendant has "fraudulently and *intentionally* copied, imitated and simulated the said trade insignia and trade-mark device of your orator, and each and all thereof so closely as to be calculated to and to actually deceive ordinary users and patrons of your orator and the public generally."

We do not think the proofs sustain these allegations. As the parties are competitors, operating in the same territory, it would seem proof of the deception of the public and patrons, as alleged, could have been easily proved, if true. The proofs do not show that any person has been actually deceived, as alleged. Each of the affiants, testifying for the complainant on this point says: "When I saw those red cabs bearing this device as I have described it, I thought and believed said device was the trade-mark device of the Yellow

Cab Company," but no one of them says he was deceived thereby so as to unwittingly become a patron of defendant. It is not said that any one of the affiants ever received or paid for service by the Red Cab Company, thinking the service was that of complainant. Actual intentional fraud as alleged by the bill is not sustained by proofs.

Conceding complainant's contention that proof of actual fraud is not necessary to establish unfair competition (*Forster Mfg. Co. v. Cutter-Tower Co.*, 211 Mass. 219), that resemblance is presumed to be intentional and for the purpose of deception (*Enoch Morgan's Sons Co. v. Ward*, 152 Fed. 690), that the law imposes upon competitors a duty not to imitate a rival's goods or trade insignia (*Moxie Co. v. Daoust*, 206 Fed. 434), conceding these propositions as sustained by these authorities and others cited by complainant, we, nevertheless, think the complainant was not entitled to a decree for another and controlling reason.

It is alleged in the answer of the defendant, and is established by the proofs, that prior to the adoption of the Y-shaped figure in a circle by complainant as its monogram, the City of Chicago (in 1893) adopted it, substantially, as the insignia of the city, for the use of the city and of any other individual or company caring to use the same; that its adoption was advertised and generally known to the citizens of Chicago and the people of the United States; that the city passed an ordinance adopting the device as "the municipal device for use by the varied unofficial interests of Chicago and its people"; that it was adopted and ever since has been used on the stationery of the city, and by its various departments and officials, including the mayor. That in conformity with that ordinance, various business associations, corporations and individuals adopted and used it, including the Chicago Association of Commerce.

Complainant says that the city had no authority under its charter to adopt such a device or enact such an ordinance; we do not think it necessary to discuss that question. Whether the ordinance is valid or invalid, the fact of its enactment long prior to the time when complainant began the use of and adopted this particular device, with the further fact that it became generally known and was quite generally acted upon by the city and various individuals and corporations, made it impossible, irrespective of whether the ordinance was valid or invalid, for complainant to get an exclusive property right in the device. It would have no more right to the exclusive use of this device and to protection from infringement of it than it would to the exclusive use of the name of the city itself. In the absence of proof of actual fraud by defendant, to permit complainant to appropriate to its exclusive use this monogram which has been so long used by the public generally would be to protect and not prevent unfair competition. 38 Cyc. 857.

The decree will be affirmed.

*Affirmed.*